UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BEAVERTAIL, INC., et al.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendant. | Case No. 4:12-cv-610-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Pending before the Court is Defendant the United States of America's Motion to Dismiss for lack of subject-matter jurisdiction (Dkt. 23). The Court heard argument on the motion on September 6, 2016, and now issues its decision. For the reasons explained below, the Court will grant the motion with leave to amend.

## BACKGROUND

Grays Lake is a 22,000-acre marsh in eastern Idaho, northeast of Soda Springs. Orestes S. John first surveyed Grays Lake in 1877, describing it as "a shallow lake of uncertain or variable extent . . . margined by fields of tule, and treacherous bog." *See Sibbett Dec.* ¶¶ 2, 3 & Ex. 1. The marsh was historically used by ranchers and homesteaders for haying and grazing.

Over time, tensions arose between the ranchers and the United States government. Both sides claimed ownership to the property. The government wished to use the marsh

MEMORANDUM DECISION AND ORDER - 1

as a water storage facility for the Shoshone Bannock Tribes and for a wildlife refuge, while the ranchers wished to continue using the marsh for haying and grazing.

In 1965, to clarify uses and ameliorate tensions, various ranchers (including the plaintiffs here) and the government entered into identical 99-year *Refuge Use and Cooperative Use Agreements*. *Compl.*, Dkt. 1, ¶ 4; *see also Agreement,* Dkt. 23-3. The agreement provides that the government will use the middle of the lakebed – which plaintiffs describe as a donut hole, or the inner ring – for a wildlife refuge and for water storage. As for the remaining, 1/2 –mile wide outer ring, the ranchers would continue to use that area for haying and grazing. *See* Dkt. 23-3.

The government also proposed to build a "perimeter dike" that would enclose the donut hole. The basic idea was that the water within the dike would be used for the Tribes and for waterfowl, while the dried area outside the dike would be used for continued haying and grazing.

The government began construction on the dike, but eventually gave up, concluding that it was not feasible. The government left the partially constructed dike in place, rather than removing it. Plaintiffs say that say the partially constructed dike has exacerbated spring flooding on their upland properties.

In 2009, the plaintiffs notified the government that they were rescinding the agreement. They demanded that the government cease its use and occupation of Grays Lake. The government has not done so, contending, among other things, that the agreement allows it to leave structures – partially built or otherwise – in place.

**MEMORANDUM DECISION AND ORDER - 2**

The ranchers filed this action in December 2012. Shortly thereafter, the Court granted the parties' motion to stay the proceedings while they attempted to settle their differences. *Mar. 13, 2013 Stay Order,* Dkt. 10. Several co-plaintiffs (including the Crystals, the Sibbetts, and Mr. Riley) resolved their disputes, which included selling their lakebed properties to the government. *See Motion,* Dkt. 23, at 3; *Response,* Dkt. 27, at 18-19. The remaining two plaintiffs – Beavertail, Inc. and Grays Lake Land & Cattle, Inc. – have not settled. In November 2015, the Court lifted the stay, and the government later filed its motion to dismiss.

## LEGAL STANDARD

1.      **Rule 12(b)(1) – Subject Matter Jurisdiction**

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Rule 12(b)(1) in one of two ways. *See Leite v. Crane Co*., 749 F.3d 1117, 1121 (9th Cir. 2014). The first is known as a "facial" attack, and it accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction. *Id.* The second method is known as a "factual" attack, and it does not assume the truth of plaintiff's allegations but instead challenges them by introducing extrinsic evidence, requiring the plaintiff to support his jurisdictional allegations with "competent proof." *Id.*

Here, the government has launched a factual attack. When considering such an attack, Court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *White v. Lee*, 227 F.3d 1214, 1242 (9th

Cir. 2000). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004) (internal quotations omitted). Where no evidentiary hearing is held, conflicts in the submissions by the parties must be resolved in the plaintiffs' favor. *Rhoades v. Avon Prods., Inc*., 504 F.3d 1151, 1160 (9th Cir. 2007).

2.     **Rule 12(b)(6) – Failure to State a Claim**

Alternatively, the government brings its motion under Rule 12(b)(6) "because Plaintiffs have failed to allege the elements of rescission or jurisdiction over their rescission claim." *Motion Mem.*, Dkt. 23, at 5.

Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Id. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement of relief.'" *Id*. at 557.

The Court uses a two-step approach for deciding when a complaint meets the plausibility requirement. First, the Court strips the complaint of legal conclusions and accepts as true all factual allegations made in the complaint, drawing all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). Second, the Court analyzes the remaining factual allegations in the complaint to determine whether a plausible claim of entitlement to relief has been alleged. *Id.*

## ANALYSIS

Plaintiffs' complaint alleges four claims, for (1) negligence, (2) negligence per se;[1] (3) trespass; and (4) ejectment. Broadly speaking, the government challenges subject matter jurisdiction based on three separate arguments. First, the government says that, despite the labels, plaintiffs are not pursuing any tort claims; rather they are pursuing contract claims which must be heard in the Federal Court of Claims. Second, the government contends that plaintiffs' trespass and ejectment claims are more logically

---

[1] Here, the complaint cites to and relies upon Idaho statutory law relating to nuisance. *See Compl.*, Dkt. 1, ¶¶ 75-81.

viewed as takings claims – again meaning the Court would lack jurisdiction to decide the claims.  Third, and finally, the government says that the Quiet Title Act does not provide this Court with jurisdiction over plaintiffs' fourth claim for ejectment.  The Court will consider each argument in turn.

**1.     The Nature of Plaintiffs' Claims**

If Plaintiffs' claims are contract claims, then then this Court cannot decide them.  Rather, the Tucker Act requires plaintiffs to pursue the claims in the Court of Federal Claims. The Tucker Act grants the Court of Federal Claims exclusive jurisdiction and waives sovereign immunity for "any claim [in excess of $10, 000] against the United States founded ... upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1).  Plaintiffs apparently seek recovery in excess of $10,000.

Whether plaintiffs' claims are contract or tort claims is determined by federal law – not by how plaintiff labels the complaint or how the complaint would be characterized under state law.  *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  Of course, "[m]any breaches of contract can also be treated as torts." *Woodbury v. United States*, 313 F.3d 291, 295 (9th Cir. 1963).  In those instances, plaintiffs – as master of their complaints – typically may choose how to proceed.  *See generally Healy v. Sea Full Specialty Co.*, 237 U.S. 479, 480 (1915) ("the plaintiff is absolute master of what jurisdiction he will appeal to . . . .").  But there are limits on plaintiffs' ability to choose.  In cases "where the 'tort' complained of is based entirely upon breach by the government of a promise made by it in a contract, so that the claim is in substance a breach of contract

claim, and only incidentally and conceptually also a tort claim," *id*., then the plaintiff must pursue that claim in the Court of Federal Claims.

Many courts have wrestled with whether a claim should be characterized as a tort or contract claim for purposes of determining jurisdiction. One of the most oft-cited cases is the Third Circuit's seminal decision in *Aleutco Corp. v. United States*, 244 F.2d 674 (3rd Cir. 1957).[2] In *Aleutco*, the plaintiff purchased $868,000 of surplus war goods in Alaska. When the Navy refused to let the plaintiff take possession of some of the goods, the plaintiff brought an FTCA suit for conversion. The court held that the plaintiff had sufficiently stated "a cause in tort for conversion" even though it "could have equally well made out a complaint for breach of contract." *Id.* at 678–79. The *Aleutco* Court clarified that "[t]he fact that the claimant and the United States were in a contractual relationship does not convert an otherwise tortious claim into one in contract." *Id.* at 678.

In *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989), the Ninth Circuit approved this principle from *Aleutco,* concluding that the *Love* plaintiff could pursue a tort claim for conversion, even though the same facts would have supported a breach-of-contract claim. *Id.* at 1246. The court noted that, "the Loves' allegations could have

---

[2] The Ninth Circuit has cited *Aleutco* with approval many times. *See, e.g., Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989) ("Our circuit has approved this principle from *Aleutco*."); *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547, 549 (9th Cir. 1984) ("The seminal case is *Aleutco Corporation v. United States,* 244 F.2d 674 (3d Cir. 1957)."); *Walsh v. United States,* 672 F.2d 745, 750 (9th Cir. 1982) (referring to the "leading case" of *Aleutco* . . . .")

**MEMORANDUM DECISION AND ORDER - 7**

been brought as a breach of contract claim, but they equally supported a tort claim for conversion." *Id.*

Similarly, in *Fort Vancouver Plywood Co. v. United States,* 747 F.2d 547 (9th Cir. 1984), the Ninth Circuit again cited *Aleutco* in determining that the plaintiff could pursue a tort claim in distract court, rather than being forced to pursue a contract claim in the Federal Court of Claims. In *Fort Vancouver,* the government contracted to buy timber from Fort Vancouver Plywood Company. Fort Vancouver cut and bucked the timber and laid it on the ground. The government was conducting a slash burn on adjacent property. The fire swept through the area where Fort Vancouver's timber lay, destroying the timber. *Id.* at 549. Fort Vancouver sued the government for negligence.

The Ninth Circuit held that Fort Vancouver's claim sounded in tort – not contract – even though the parties had an underlying contract regarding the timber. The court explained that while the contract established ownership to the timber, it was not "otherwise implicated" in the case; certainly the underlying contract did not "allocate liability under the circumstances presented by [the] case, . . . ." *Id.* at 552.

Plaintiffs here say they are similar to the plaintiff in *Fort Vancouver.* That is, they say that although they had a contract with the government, the government nevertheless breached a separate duty to them – the duty to refrain from damaging other property with the dike the government has partially constructed. The government, by contrast says *Fort Vancouver* is distinguishable because "there was a contractual arrangement, but also a separate tort – negligently causing the fire." *Reply,* Dkt. 30, at 5. The government says

that, unlike the timber company, the ranchers "cannot identify a tort separate from the breach of contract." *Id.*

The government also says that "[t]o reach Plaintiffs' claims, the Court would first have to determine whether the United States breached the leases [i.e., the use agreements] – a determination outside this Court's jurisdiction." *Motion Mem.*, Dkt. 23, at 8. At the same time, however, the government says it had no contractual obligation to construct the dike and, further, it has no contractual obligation to remove the partially constructed dikes. So the ranchers' point is ultimately well taken: The dike is sitting there regardless. It may be contractually permissible for the dike to be there, and it may not be. But the larger point, according to the plaintiffs, is that the government has a duty – separate and apart from any contract – to refrain from damaging their property. The Court thus concludes that the plaintiffs could choose to pursue tort claims without running afoul of the Tucker Act.

The only problem is that the complaint, as drafted, often focuses on the underlying contractual relationship between the parties, with plaintiffs implicitly asking this Court to resolve disputes about that contract. For example, plaintiffs repeatedly allege that the government breached various duties to the them *after the contract was allegedly rescinded. See, e.g., Compl.,* Dkt. 1, ¶ 65 (alleging that the government breached duties by failing to remove the dike "*after the Agreement was rescinded*"); *see also id.* ¶¶ 67, 69, 71, 73, 77, 85-90, 92-94). These sorts of allegations muddy the waters, because even though plaintiffs' claims are labeled as torts, it appears that they are seeking to resolve

**MEMORANDUM DECISION AND ORDER - 9**

contract questions.  That said, however, Plaintiffs could easily pursue tort claims on the stated facts.  The Court will therefore grant the government's motion to dismiss, though it will give plaintiffs an opportunity to amend their complaint to pursue tort claims.

Granted, the government may still choose to assert a defense to plaintiff's re-pleaded tort claims based on the parties' underlying contract, but such a defense would not strip the Court of jurisdiction over plaintiffs' tort claims.  *See Kennewick Irrigation Dist. v. United States,* 880 F.2d 1018, 1032 (9th Cir. 1989) (the "government may of course assert a contractual defense in a tort action under the FTCA without running afoul of the Tucker Act, 28 U.S.C. § 1346(a)(2), . . . ."); *see also Aleutco Corp. v. United States*, 244 F.2d 674 (3d Cir. 1957).[3]  Likewise, the government may claim that plaintiffs' claims are barred by the statute of limitations, but the Court will table that issue for another day.  Among other things, the limitations issue has not been fully briefed as the government raised it on reply.

## 2.   Takings

The government next argues that plaintiffs' claims sound "suspiciously" like takings claims, rather than tort claims.  Under the Tucker Act, the Court of Federal Claims has exclusive jurisdiction over takings claims exceeding $10,000.  28 U.S.C.

---

[3] In response to the Court's questions regarding this issue during oral argument, the government submitted a helpful post-argument brief.  In this brief, the government stated, "It appears that the Government's ability to assert a contract-related defense may not render re-pleading futile." *Notice of Supp. Authority,* Dkt. 37, at 2.

§ 1491 (referring to exclusive jurisdiction over suits "founded either upon the Constitution . . . or any express or implied contract with the United States.").

But just because a particular set of facts could support a takings claim does not mean that plaintiffs must pursue such a theory. *See, e.g., Hansen v. United States,* 65 Fed. Cl. 76, 101 (2005) ("tort and takings claims may arise from the same operative facts, both in practice and in principle"). Rather, the fact that the government's alleged actions might support a takings claims simply demonstrates that those same facts could support tort claims. "While not all torts are takings, every taking that involves invasion or destruction of property is by definition tortious." *Hansen v. United States,* 65 Fed. Cl. 76, 99 (2005).

The government relies on *Myers v. United States*, 323 F.2d 580 (9th Cir. 1963) to support its assertion that plaintiffs are actually alleging takings claims, as opposed to tort claims. The plaintiffs in *Myers* requested a damage award under the FTCA for trespass and waste resulting from road construction which allegedly altered private roads and driveways, involved unauthorized digging and destruction of lands, destroyed timber and trees, resulted in parking equipment on private lands, obstructed entry to places of business, and made it necessary to move one plaintiff's home. With almost no explanation, the Ninth Circuit concluded that these allegations meant that the plaintiffs were alleging Fifth Amending takings claims: "To us the claims of appellants against the United States are founded upon the [Fifth Amendment of the] Constitution, and the acts

**MEMORANDUM DECISION AND ORDER - 11**

of the United States complained of are in the nature of [a taking by] inverse condemnation." *Id.* at 583.

*Myers* does not control the outcome here because after that case was decided, the Ninth Circuit adopted a less restrictive approach to finding jurisdiction under the FTCA. *See, e.g., Walsh v. United States,* 672 F. 2d 746 (9th Cir. 1983) (claim sounds essentially in tort rather than in contract when a landowner sued the United State as owner of a highway easement for negligently permitting cattle guards to become damaged).

### 3. The Quiet Title Act

Finally, the government says jurisdiction cannot arise under the Quiet Title Act, 28 U.S.C. § 2409a, suggesting that title is not, in fact, disputed. At the same time, however, the government will not expressly concede that the plaintiffs in fact own the disputed, lakebed property. Given that, the Court concludes that title to the lakebed property remains in dispute – meaning that jurisdiction could arise under the Quiet Title Act.

Plaintiffs' complaint expressly refers to the Quiet Title Act, stating, "This action arises under the Federal Tort Claims Act, 28 U.S.C. § 2674 ("FTCA"), under Idaho negligence, trespass, nuisance, and other state law, *and under the Quiet Title Act, 28 U.S.C. § 2409a.*" Compl., Dkt. 1, ¶ 10. at 3 (emphasis added).

The government also says plaintiffs failed to properly plead a Quiet Title action because they did not join the State of Idaho, which claims an interest in the property. *See Reply,* Dkt. 30, at 9. Failing to join a necessary party is not a jurisdictional defect, however. *See* Fed. R. Civ. P. 19; Fed. R. Civ. P. 12(b)(7).

Theoretically, then, plaintiffs *could* allege a quiet title action. The question is whether they have actually done so. The Court concludes they have not. They do not, for example, seek a declaration establishing title in their names. Nevertheless, given that the government has refused to concede title, and further indicates that the State of Idaho refuses to concede title, the Court will allow plaintiffs to amend their complaint to state a quiet title action.

## ORDER

**IT IS ORDERED that** Defendant's Motion to Dismiss (Dkt. 23) is **GRANTED WITH LEAVE TO AMEND.** Plaintiffs shall file any amended complaint within 21 days of this Order.



DATED: September 29, 2016

_____
B. Lynn Winmill
Chief Judge
United States District Court

MEMORANDUM DECISION AND ORDER - 13